JAMES B. BAIRD *et al. vs.* JACK HALL.

A collecting officer or agent, without instructions to the contrary, is authorized to receive, in payment of such debts as he may have to collect, whatever kind of currency is received by prudent business men for similar purposes, and whatever an officer is authorized to receive, a debtor is authorized to pay.

When, therefore, a Clerk and Master, in the year 1863, received Confederate currency in payment of the purchase money, due for lands sold in 1858, it is to be determined upon the principle above stated, whether the money should have been taken or not. If not, the Master is responsible for the value of the currency, and the purchaser entitled to a credit *pro tanto*, and in a proceeding against him, to collect the money or re-sell the land, the Master should be made a party.

Where instructions are given, or the parties interested assent to the payment of Confederate money to the Master, he and the purchaser are released from any liability therefor.

When the widow and heirs at law unite in a petition to sell the lands decended, she electing to take the value of her dower in money, and she becomes the purchaser and re-sells to a third person; *it was held*, that, in a proceeding against the second purchaser to collect the money or re-sell the land, he is entitled to a credit for the value of the dower, and likewise for the value of the shares of any one or more of the heirs at law who were capable of assenting, and did assent to payment in Confederate currency.

[*Atkins* v. *Mooney*, Phillips 31.   *Emerson* v. *Mallett*, Phil. Eq. 234.]

This was an action to subject real estate in the hands of a second purchaser, to the payment of the purchase money due on a Clerk and Master's sale, tried before *Cloud, J.*, Fall Term, 1871, of ROWAN Superior Court.

Plaintiffs allege, that they are the heirs-at-law of one Horace Baird, who died in the County of Rowan, in the year 1858, seized of a large real estate; that they, in connection with the widow of the deceased, filed a bill for the sale for partition of said lands; that a decree was made in 1858, directing a sale of

BAIRD *et al. v.* HALL.

the same; that the real estate was sold by the Clerk and Master, one Luke Blackmer, and the widow became the purchaser, for the aggregate sum of $5,710; that the Master, in September 1863, made a deed for the said real estate to the purchaser, Mrs. Baird, who subsequently sold the same to the defendant Hall, and that no part of the purchase money has been paid.

The complaint demands judgment, that the defendant be ordered to convey the land to the plaintiff, or that the same be sold and the proceeds applied to the payment of the purchase money, &c., &c.

The defendant, in his answer, admits the filing of the bill, the decree, sale, and purchase by Mrs. Baird, but alleges, by way of defence, that in February 1863, Mrs. Baird, by her agent, Luke Blackmer, contracted in writing to sell to him, as of January 1863, the most valuable part of the real estate, for the sum of $10,000 in Confederate money; that he paid to the said Mrs. Baird, on the 25th February, 1863, through her agent Blackmer, the said sum of $10,000 in Confederate money, and took from her a written undertaking to make title as soon as a survey could me made; that on the 15th day of September, 1863, Mrs. Baird agreed in waiting to sell him the remainder of the real estate, for the sum of $5,000 in Confederate money; that he subsequently paid the money to Mrs. Baird, and took a deed for the whole of the land on the 21st day of October, 1863; that the Clerk and Master did make to Mrs. Baird a deed for the real estate in September 1863, but that it was not the first deed; that shortly after the payment of the $10,000, the said Clerk and Master made a deed to Mrs. Baird, and she conveyed to the defendant, but that afterwards, and after receiving the balance of the purchase money from Mrs. Baird, the Clerk and Master made a deed to her, including *all* the real estate purchased, which she then conveyed to him.

Defendant alleges, that he paid Luke Blackmer, Clerk and Master in Equity, and the agent of Mrs. Baird, the sum of

---

BAIRD *et al. v.* HALL.

---

$15,000 in Confederate money ; that $10,000 was paid in February, and the remainder in September and October, 1863. Defendant insists that it was a valid payment, and as such was accepted and received by Blackmer, Clerk and Master.

Defendant insists, that he has a right to be substituted to the rights of Mrs. Baird ; that she and the other plaintiffs, who were of age, assented fully to the receipt of the Confederate money by Blackmer, and that, in any event, he is entitled to the value of the Confederate money *paid.*

At Fall Term 1871, several issues were submitted to the jury, under the direction of the presiding Judge. The most material of said issues are :

1st. Did L. Blackmer act as the agent of Mrs. Baird, in the sale of her interest in the lands, to the defendant Hall ?

2d. Did Blackmer apply the money received from Hall to the payment of Mrs. B.'s bid, and if so, did he act as her agent in so doing ?

3d. Did any of the heirs at-law of Horace Baird assent to, or concur, in the sale of the land by Mrs. B. to Hall, and Hall's payment of the bid in Confederate money ?

The jury found affirmatively on each issue submitted. There was a motion for a new trial on account of some irregularity in receiving the verdict. The motion was overruled, and plaintiffs appealed.

*Jones & Johnston,* for the plaintiffs.
*Blackmer & McCorkle,* and *Clement,* for the defendant.

READE, J. It appears that the widow, Mrs. M. E. Baird, authorized the Clerk and Master, Blackmer, to receive Confederate money in payment for the land sold by him.

Any alleged claim of hers therefore, against the defendant, may be put out of the question. ⁕ It also appears that there are others of the plaintiffs, who also authorized the Clerk and Master to receive the Confederate money. Their claim also

may be put out of the question; for having once assented, they cannot be heard now to object. But it is to be inferred from the finding of the jury, that there are others of the plaintiffs who did not *assent*, although it does not appear that they made any *objection*. Whether, as to them, the payment was good, depends upon the question, whether prudent business men, in that locality, would have received *such* money in satisfaction of *such a debt*. For, without instructions to the contrary, a collecting officer, or agent, is authorized to receive whatever kind of money is generally received by prudent business men, in payment of *such* debts as he has to collect. *Atkins* v. *Money* Phil. R. 31. And of course, whatever the officer Blackmer was authorized to *receive*, the defendant was authorized to *pay*. If the Clerk and Master was not authorized to receive the money because of its depreciation, then, as to such as did not assent, it was a *part payment* only, to the *value* of the Confederate money paid, and the Clerk and Master was liable for that *value*, and the defendant was still liable for the balance. This was the rule established in *Emerson* v. *Mullett*, Phil. Eq. R. 234, as the most equitable and convenient under the circumstances.

As the case is now presented, the defendant is entitled to have it enquired, whether on the 26th February, 1863, when he paid the money to the Clerk and Master, Confederate money was generally received by prudent business men, in payment of such debts as the Clerk and Master had to collect. If that is answered in the affirmative, then, he has paid the debt, and is not liable at all to any body. If answered in the negative, then, he is entitled to the enquiry, what was the *value* of the Confederate money which he paid; which enquiry may be answered by the Legislative scale; and then, treating it as a part payment for so much, he will be liable for the balance. But still, he will be entitled to have it enquired, what is the widow's share of the proceeds of the sale, in lieu of her dower; and he will be entitled to be allowed that. And so he will be

entitled to have it enquired, who among the plaintiff's assented to the payment; and then, as to them, the payment will be in full, so that his liability, in any event, can only be to those who did not assent; and, as to them, only for the balance after allowing him the *value* of the Confederate money.

It must also be considered, that whatever amount the defendant has to pay to remove the equitable incumbrance on the land which the plaintiff Margaret L. Baird sold him, in that amount she becomes indebted to him ; and he has an equitable lien upon her interest in the funds, in the hands of the Clerk and Master, which has not been paid over to her. And he would be entitled to an order to have that interest applied in liquidation of any balance which may be found against him, if any. It will be seen, therefore, that, as we said in *Emerson and Mallett, supra,* the Clerk and Master ought to be a party : for in the event that it appear that he was authorized to receive Confederate money, then, the defendant will be discharged altogether and he alone will be liable to the plaintiffs. And in the event he was not authorized to receive it, still, it was a payment to the amount of its *value,* and he is liable to the plaintiffs for that. And so, he is liable to the defendant for the widow's interest now in his hands, in the event the defendant has anything to pay, to remove the encumberance upon the land which she sold him.

From what we have said, it will be seen, that it is impossible for us to give any judgment which will fully adjust the rights of the parties, because sufficient facts are not found to enable us to do so. We have, however, endeavored to declare their rights in different aspects, to meet any state of facts which seems to us to be probable.

Judgment will be reversed, and a *venire de novo,* to the end that the Clerk and Master may be made party defendant, and there may be such issues as are suggested, and such judgment as the law allows.

There is error.

PER CURIAM                                    *Venire de novo.*