ROBERT L. PURVIS, Guardian, v. JOHN C. JACKSON.

When one is sued individually, upon a judgment obtained against him years since as administrator, and wishes to take advantage of such variance, he should plead *nul tiel record.* By pleading to the merits, he waves the objection.

Whenever it is sought to establish an authority in a clerk, to bind a plaintiff by the receipt of depreciated currency in payment of a judgment, it must be shown, either that the receipt was expressly authorized by the plaintiff, or, that the plaintiff has done acts from which such an authority may fairly be implied.

Acts from which such an agency in the clerk beyond what the law (Rev. Code, chap. 31, sec. 127,) gives him, may be implied, must be such as under the circumstances were reasonably calculated to induce the debtor to believe that the c erk was the creditor's agent for the purpose; as, for instance, that the creditor had procured an order to collect the money; or had issued an execution without instructing the sheriff what kind of money he was to receive in payment, &c. And if, from such acts, the debtor has been reasonably led to believe that the clerk was authorized to receive payment of a judgment in Confederate money, and acting on that belief, pays the judgment in such money, it is immaterial whether the clerk was really the agent or not; the creditor being estopped from denying the agency, and the debtor protected in his judgment.

Where a plaintiff, before the war, obtained a judgment against an administrator, but issued no execution thereon and demanded no payment thereof, either before or during the war, and upon the defendant's voluntarily paying the amount of the judgment into the Clerk's office in 1863, the plaintiff as soon as he heard thereof at once repudiated such payment: *Held,* That notwithstanding prudent business men in the same community and at the time were receiving Confederate money in payment of debts, still the plaintiff might disregard such payment by the defendant altogether, and recover the whole amount of the original judgment.

(The cases of *The Governor* v. *Carter,* Hawks 328; *Atkin* v. *Mooney,* Phill. 31; *Emerson* v. *Mallett,* Phill. Eq. 234; *Greenle* v. *Sudderth,* 65 N. C. Rep. 470; *Baird* v. *Hall,* 67 N. C. Rep. 230; *Utley* v. *Young,* 68 N. C. Rep. 387, cited, commented on and distinguished from this.) •

CIVIL ACTION, tried at the Spring Term, 1873, of the Superior Court of MOORE county, before his Honor, *Buxton. J.*

Summons in this case, issued 1st August, 1871.

Plaintiff, as guardian for his children, had obtained a a judgment at the October Term, 1859, of the Court of Pleas and Quarter Sessions of Moore county, against the present defendant, Jackson, as administrator of one Shields, for the sum of $318.72. Shields was the grandfather of the

wards of the plaintiff, and the judgment recovered was for the amount of their distributive shares in their grandfather's estate. The present action was brought to enforce this judgment against the defendant personally.

The defence insisted upon is, that the judgment was paid and satisfied in full before the commencement of this action. And in support of such, his defence, the defendant produced in evidence sundry vouchers for small items of account, connected with the estate of the said Shields, for which he claimed that the wards were properly chargable. No objection, the plaintiff allowing defendant's claim in this respect to the full amount, to wit: $26.84. Defendant then produced as evidence a receipt of A. H. McNeill, clerk of the County Court of Moore county, when such Court existed, dated 28th February, 1863, for $325.61, balance due upon the judgment, and insisted that the whole judgment was thus shown have been paid off and satisfied. The effect of this receipt is the point raised below, and the principal one decided in this Court.

The following are the facts as proved:

After the judgment was obtained, no execution was ever ordered or issued. Some short time before the commencement of the late war, the plaintiff asked the defendant for money; defendant offered to pay a part, saying that he did not have at the time money enough to pay the whole amount; this partial payment the plaintiff declined to receive. Thus the matter stood, nothing further being done or said by the parties until the 28th February, 1863, when the defendant, in a settlement with McNeill, the clerk, having in possession Confederate money derived from the estate of Shields, his intestate, paid the same into the office of said clerk upon this judgment, obtained by the plaintiff as before stated, to the amount of $325.61, and took the clerk's, McNeill's, receipt for the same, which is here offered as evidence. This sum, $325.61, together with the amount

of the vouchers allowed, made the amount of the principal and interest of the judgment at the date of the receipt. Defendant at the same time paid the costs of said judgment.

This payment into office was made without the consent or knowledge of the plaintiff; who, when informed of it by the clerk directly thereafter, and when urged by the clerk to take the money, refused to do so, assigning as a reason "that it was too pale in the face." And afterwards, when told by the clerk that unless something was done the money would be lost, he, the plaintiff, informed the clerk that he might fund it or do what he pleased with it, that he himself never would take it. This refusal of the plaintiff to receive the money was communicated to the defendant by the clerk shortly after it occurred, and was the first intimation that the defendant had of the plaintiff's objection to receive Confederate money. Defendant had not been asked for the money after the war commenced, and being advised that the payment to the clerk was a good and an effectual payment, he declined to withdraw the money from the clerk's office. The clerk, to keep it alive as long as possible, funded the sum paid by defendant in the "new issue," which died on his hands.

The wards of the plaintiff, who are his own children, have long since arrived at full age, but on account of this unsettled matter with defendant, the plaintiff has been unable to settle with them.

It was also in evidence that in the year 1863, especially in the earlier part of that year, Confederate money was generally received in payment of debts, new and old, although some persons refused to receive it.

Defendant objected to the plaintiff's recovery in this action, because of an alleged fatal variance, to wit: The first judgment—the foundation of the present action—was rendered against the defendant as administrator of Cornelius Shields;. this action is brought against him in his individual capacity.

Upon this point his Honor *held,* that the original judgment fixed the liability of the defendant to the wards of the plaintiff, as distributees, and that the present action was properly instituted to enforce it. Objection overruled, and defendant excepted.

Defendant then asked for the following special instructions:

1st. That the plaintiff was not entitled to a verdict, if the jury should find that men of ordidary prudence would have taken Confederate money at the time in payment of *ante* war debts.

2nd. Nor can the plaintiff recover, if the jury should find that the plaintiff had made the money paid into his office his own.

His Honor refused to give either of the instructions prayed; and charged the jury that as the case stood, the most the defendant was entitled to by reason of his payment of the Confederate money into the office of the clerk, would be to allow such payment to be a credit on the judgment, to the extent of the value of the money paid in good currency at the time, to-wit: 28th February, 1863; such value to be determined by the scale provided by the Act 12th March, 1866. As to the second instruction prayed by defendant, there was no evidence offered to warrant it. Defendant again excepted.

There was a verdict for the plaintiff. Rule for a new trial, and upon the argument of this motion, his Honor expressed great doubt whether the payment by the defendant of the Confederate money to the clerk was, under the circumstances, valid to any extent, and suggested an appeal on the part of the plaintiff, in order that the whole of the points involved might be presented to this Court for adjudication. The plaintiff being content with the course the case had taken, declined to appeal. Rule for a new trial discharged; judgment and appeal by defendant.

*Merrimon, Fuller & Ashe,* and *B. Fuller,* for appellant.
No counsel for plaintiff.

RODMAN, J.    At October Term, 1859, of the County Court
of Moore, plaintiff as guardian, recovered judgment against
the present defendant for $318.72.    This is an action to
recover on that judgment.

The defendant answers that in February, 1863, he paid
the full amount of the judgment to the clerk of the Court
in which it was recovered, and thereby satisfied the same.

On the trial it appeared that the original judgment was
obtained against the defendant as the administrator of
Shields, for a sum owing to the wards of the plaintiff as
distributees of the intestate, Shields; no execution had ever
issued on it.    The money was paid as pleaded without the
knowledge or authority of the plaintiff, (except so far as
such authority may follow from the official power of the
clerk,) who, when informed of the payment, refused to receive
the money.    This refusal was immediately communicated
to the defendant, who nevertheless, permitted it to remain
in the office of the clerk until it became worthless.    It was
also in evidence that in 1863, especially in the earlier part
of the year, Confederate money was generally received in
payments of debts, new and old, though some persons
refused to receive it.

1. The defendant objected to the effect as evidence of the
record introduced to prove the judgment of 1859, declared
on, because the record introduced was that of a judgment
against the defendant as administrator, whereas the judg-
ment complained on was alleged to be against him personally,
and contended there was a fatal variance.

If this objection had been open to the defendant, we are
inclined to think it would have been a good one.    The
judgment complained on is against the defendant person-
ally, and there are material differences between such a judg-

ment, and one against a defendant as administrator. Upon the latter, even after a finding of assets, the judgment is that execution be levied "*de bonis testatoris*," and before the plaintiff can have judgment that the execution he levied *de bonis propriis* of the administrator, he must allege and prove that the assets have been wasted, which he may do by a return of "no assets of the testator to be found," or perhaps by other proof. Whether under any circumstances, an administrator who has been once fixed with assets, can exonerate himself by showing that the assets have since been lost by the act of God or other like cause, it is unnecessary to inquire.

In this case the objection is not open to the defendant, because, instead of taking issue upon the judgment by a plea of *nul tiel record*, and putting the plaintiff to proof of his judgment, he expressly admits the judgment as alleged, and waives all proof. It was not necessary for the plaintiff to introduce any proof of his judgment, consequently this exception is overruled.

2. The defendant requested the Judge to instruct the jury that the plaintiff was not entitled to recover, if men of ordinary prudence would have taken Confederate money in payment of *ante* war debts, at the time of the payment to the clerk by him, viz: in February, 1863. This his Honor declined, and told the jury that the defendant was entitled to credit for the value of the money prid, at the time of the payment, according to the scale and for that only, and was liable for the residue. Defendant excepted. This exception presents the question whether the payment to the clerk was a satisfaction of the judgment at all, and if it was, then whether it was so to the nominal amount of the money paid, or only to its value at the time of payment as evidenced by the scale.

The Rev. Code, chap. 31, sec. 127, (1856) enacts: The "defendant against whom any final judgment or decree for

the payment of money may be rendered or made, by any Court of record, may pay the whole or any part thereof to the clerk of the court 'in which the same may have been rendered or made, at any time thereafter, although no execution may have issued on such judgment or decree, and such payment *of money* shall be good and available to the party making the same."

For many years after the passage of this act, gold was the only legal tender in payment of debts. It was held, however, in *Governor* v. *Carter*, 3 Hawks, 328, (1824,) that it was not malfeasance in a sheriff to sell property under execution for the depreciated current bank bills. And it has some times been assumed, on the authority of this case, as erroneously stated in the digests, that it authorized any collecting officer to receive current money in payment of debts, and thereby discharge the debt. But the case will bear no such interpretation, and HENDERSON, J., expressly says, that the creditor cannot be made to receive anything but specie, except by consent. We are not aware of any other decision bearing on this question prior to the recent war.

The first which needs be noticed is *Atkin* v. *Mooney*, Phil. 31, (June Term, 1866.) The sheriff had an execution against defendant, who paid it to the sheriff in Confederate money,. Neither the date of the judgment or of the payment appear in the report. READE, J., delivering the opinion of the Court, says: " A sheriff, in the absence of instructions to the contrary, would be justified in receiving what was passing currently in payment of debts of the character which he had to collect. Yet there must be some limit to the discretion of the sheriff; for if he receive funds which are so much depreciated that it would amount to notice that the plaintiff would not receive them, he would be liable to the plaintiff in the execution."

In *Emerson* v. *Mallet*, Phil. Eq., 234, (June Term, 1867,) the above rule was affirmed, and it was said that whether

the receipt of Confederate money by an officer could be justified, would depend on the circumstances in each particular case, and no inflexible rule could be laid down. It was suggested that receipts prior to 1863, could generally be justified, but after that year they could not be, the year itself being debateable ground. If the officer received Confederate money when he ought not to have done so, it was a payment of the debt to the amount of its value only, for which the officer would be responsible, and the remainder of the debt would be unpaid. It may be noticed that in this case there was an order to collect, and the payment was made on 26th December, 1863.

*Greenlee* v. *Sudderth*, 65 N. C. Rep. 470, (June Term, 1871,) was an action against a clerk for money received by him on 5th April, 1862, against the instructions of the plaintiff. It was held that the clerk was liable for the value of what he received, and the defendants for the residue of the debt.

In *Baird* v. *Hall*, 67 N. C. Rep. 230, (June Term, 1872,) a clerk had been ordered to collect the price of land sold by him. Some of the owners of the fund directed him to receive Confederate money ; others did not. The question of payment arose between the debtor and those who had not given authority to the clerk. He received payment for all the owners in Confederate money on 25th February, 1863. The Court says, " the defendant (the debtor for the land), is entitled to have it inquired whether on the 26th of February, 1863, when he paid the money to the clerk and master, Confederate money was generally received by prudent business men in payment of such debts as the clerk and master had to collect. If that is answered in the affirmative, then he has paid the debt and is not liable at all to anybody. If answered in the negative, then he is entitled to the inquiry, what was the value of the Confederate money which he paid, which inquiry may be answered by the legislative scale ; and then treating it as a part pay-

ment for so much, he (the debtor) will be liable for the balance."

In *Utley* v. *Young*, 68 N. C. Rep. 387, (January Term, 1873,) the sheriff had an execution in favor of plaintiff against defendant upon a judgment at February Term, 1861, of Wake County Court, and on 18th May, 1863, defendant made a payment thereon to the sheriff in Confederate money. The question was whether the payment so made was to be credited at its nominal, or its actual value, or whether the plaintiff could reject it altogether.

The Court say that it cannot decide the question, because it is not found whether prudent business men received such money in payment of such debts at the time and place of the payment. If they did, the payment was authorized and the debt satisfied against the defendants. If the payment was unauthorized the plaintiff might disregard it altogether and hold the defendant bound for the whole debt, or he might (as in *Greenlee* v. *Sudderth*), ratify it to the extent of its value, and hold the defendants bound for the residue.

We have gone thus fully into the cases to show that none of them professes to cover the question in the present case. In all of them, (except *Greenlee* v. *Sudderth*, in which the plaintiff afterwards ratified the receipt) there was either an order to the clerk to collect the money, or the payment was made to a sheriff with an execution in his hands. Therein this case is materially distinguished from the others. Here the judgment was taken some four years before the payment; no execution had ever been issued on it, and none could then be, so that the payment was a purely voluntary one.

It cannot be contended that by *force of the statute only* the clerk had authority to to receive payment in anything but *money;* and money, strictly speaking, means what the law calls money, and makes a legal tender. The statute cannot be construed to authorize a payment in depreciated currency; and if it did, it would violate both that clause of the

Constitution of the United States which prohibits a State from making anything but gold and silver a legal tender, and also that which prohibits a State from impairing the obligation of contracts.

The statute was for the convenience of debtors, by providing a convenient place of payment and relieving them from the necessity of seeking the creditor, perhaps at a distance, or of waiting for execution to be issued to the sheriff. Whenever it is sought to establish an authority in a clerk to bind a plaintiff by the receipt of depreciated currency in payment of a judgment, it must be shown either that the receipt was expressly authorized by the plaintiff, or that he has done acts from which such an authority may fairly be implied. The agency for this purpose must be proved like any other agency. It is not given by statute, but must come from the party. If any authority be wanted for so plain a proposition, it may be found in *Ward* v. *Smith*, 7 Wall. 447. This is the only principle on which the cases that have held a plaintiff bound by the receipt by an officer of Confederate money can stand, and this principle will support all heretofore decided.

In the present case there is no pretence that the clerk had any express authority beyond what the statute gave him. The important question is, whether there is any evidence in this case from which such an authority beyond what the statute gives can be implied.

Acts from which an agency in the clerk beyond what the law gives him may be implied, must be such as under the circumstances, were reasonably calculated to induce the debtor to believe that the clerk was the creditor's agent for the purpose. If a debtor has been induced by the conduct of the plaintiff, reasonably calculated to have that effect, to believe that the clerk was authorized to receive payment of a judgment in Confederate money, and acts on that belief by paying the judgment in such money, it is immaterial

whether the supposed agent was really an agent or not. The creditor is estopped to deny the agency, and the debtor is protected by the payment.

If a creditor procures an order for the collection of money by a clerk, or issues an execution to a sheriff without instructions as to the money in which he is to collect, such conduct is certainly evidence that he authorizes the officer to receive such money as is current in the community in like cases, and when Confederate money is the only currency which can be procured, the inference is almost a necessary one, that he authorized the officer to collect in that. This is the doctrine of all the cases above cited, and it seems entirely reasonable.

In the present case, we are of opinion that there was no evidence from which the authority of the clerk to receive Confederate money could be implied. If we assume that prudent men did receive that money in payment of such debts at the time of the alleged payment, it could not affect the plaintiff, unless by some act, he had indicated his acquiescence in the course of dealing as applicable to his claim ; as for example, by issuing an execution for its collection. It must be admitted that notwithstanding the supposed course of dealing among other persons, the plaintiff would not have been bound to receive Confederate money if it had been offered to him. But to hold that *merely* by the course of dealing among others, he made the clerk his agent to receive such money, is in effect to compel him to do through another, what he was not himself compelled to do.

There is no other evidence against the plaintiff than the course of dealing, which for the sake of the argument, we assumed to have been proved. He issued no execution; he made no attempt to revive his judgment; he never demanded payment; as soon as he was informed of the payment he repudiated it. We are of opinion, in accordance

with what is said in *Utley* v. *Young*, that the plaintiff may disregard the supposed payment altogether, and recover the whole of the original judgment.

3. We can see no ground for holding that the payment to the clerk was a valid payment to the value of the currency at the time. If the clerk was the agent of the plaintiff to receive payment in Confederate money, then the plaintiff was bound by the act of his agent, and the payment discharged the defendant. If he was not, then plaintiff was not at all bound by the act of the clerk, and the payment was wholly without effect. The Judge upon the evidence, should have told the jury that the plaintiff was entitled to recover the full amount of the original judgment, (except of course, the small sums paid to plaintiff or his wards personally, about which there was no dispute,) and that there was no evidence of a payment beyond that to any authorized agent of the plaintiff.

4. On the second instruction prayed for, we agree with his Honor. There was no evidence of a ratification.

5. We are not called on to decide any questions between the clerk and the defendant.

PER CURIAM.     Judgment reversed, and *venire de novo*.