BENJAMIN BYNUM v. G. W. BAREFOOT, Ex'r. of A. J. BARE-
FOOT.

A debtor may pay money (on a judgment) to the clerk of the Court, be-
fore an execution issues, or after the execution has been returned. He
has no right to pay the same to the clerk, when the execution is in the
hands of the sheriff.

This was a CIVIL ACTION, heard and determined before
his Honor Judge SEYMOUR, at the Fall Term, 1875, of the
Superior Court of WILSON County.

The plaintiff sued upon a judgment obtained at Fall
Term, 1862, of Wilson Superior Court, in the name of T. H.
Mallison, to the use of Benjamin Bynum, against A. J. Bare-
foot. The defendant admitted the rendition of the judg-
ment, but alleged that the same had been paid and satisfied
and pleaded no assets. Upon the question of payment the
case was submitted to the jury.

In the course of the trial the defendant offered in evidence
the following receipt, to-wit: " Received from J. W. Davis,
for Thomas H. Mallison, one hundred and twenty-nine dol-
lars and ninety-six cents, payment of bill of cost in the
Court of Equity in the case of James R. Barnes, &c. v.
Thomas H. Mallison. March 25th, 1864. (Signed,) Geo. W.
Blount, C. M. E." The defendant offered to show by the
Clerk of the Court that this receipt was found among the
Court papers, (*i. e.* the judgment roll,) in the original cause
of *T. H. Mallison,* to the use of *Bynum* v. *Barefoot,* in order
to show that Mallison was the agent of Bynum, and that he
had received a part of the money paid upon an execution
issued upon said judgment, and used it in another suit ; and
to show that Mallison, who was the legal plaintiff of record,
had used a part of this money. This evidence was offered
after it was in proof that an execution had issued on said

judgment, and had been paid in Confederate money; And after evidence had been given showing that neither Bynum nor Mallison had had any communication with the officers of the Court, or access to its papers during the war.

His Honor excluded said receipt and all evidence relating thereto. Defendant excepted.

It was also in evidence and not denied, that in 1860 the plaintiff, who resided in Craven county, being the owner of a note given to him by the defendants' testator for the purchase money of a slave, gave the same to his son-in-law, Mallison, to take to Wilson and put in a train of collection. Mallison gave the note to a lawyer in Wilson who brought suit on it, in the name of Mallison to the use of Benjamin Bynum against the defendant's testator. The attorney originally employed having entered the Confederate service, turned over the case to another member of the bar, Mr. Lancaster, who obtained judgment thereon in December, 1862. His name appeared on the docket as the attorney of record, and he receipted upon the execution docket for the tax fee.

At the time the judgment was rendered, and thereafter, until the end of the war, both Mallison and Bynum resided within the lines occupied by the U. S. forces, and they never had any communication with their attorney, agents, or the officers of the Court, with reference to this judgment, until the fall of 1865.

Within six weeks after obtaining said judgment, the clerk, in accordance with the provisions of an Act of the General Assembly, issued an execution to the sheriff of Wilson county, and in consequence of pressure from the sheriff, and to prevent his property from being seized, the testator of defendant, then defendant in execution, paid the amount thereof into the office of the Superior Court Clerk, in Confederate money. At the time of such payment, January, 1863, business men in said county transacted their ordinary

37

affairs by means of such currency, and debts before the war and otherwise were paid in it.   There was no evidence that the money in question was ever paid to the plaintiff or to Mallison, but still remains in the office.

In the fall of 1865 plaintiff came to Wilson to see after his debt, and finding that it had been collected in Confederate money, refused to receive the same.   The original defendant, A. J. Barefoot, died in September, 1873, and the plaintiff sues his executor to Fall Term, 1874.   The testator, the said A. J. Barefoot, had in possession a large amount of real and personal property at his death, but was notoriously financially embarrassed.   No demand was made on Barefoot before his death, for this debt.   This, Bynum explained by stating that he consulted counsel, who advised him not to sue, in consequence of the stay laws, and afterwards in consequence of the alleged fact, that Barefoot was insolvent ; and that after his death he was advised that his, Barefoot's, estate would turn out to be solvent.

There was no evidence that the plaintiff or Mallison had ever forbidden the issuing of an execution, and there was no evidence that the defendant in the execution had ever been informed that the plaintiff or Mallison had refused the Confederate money, paid into office as aforesaid.

His Honor being of opinion that the questions involved were matters of law, and that the parties did not materially differ as to the facts, prepared a statement of the facts, which was agreed to, with one or two suggestions by defendant, who insisted on submitting the case to the jury.   This was done on the question of payment or nonpayment.

As the question in this Court was confined to the simple one: Had the Clerk of the Superior Court authority to receive the money in payment of the judgment whilst an execution for the same was in the hands of the sheriff?   It is unnecessary to set out the defendant's prayer for special instructions, as also his Honor's full and elaborate charge to

the jury upon all the points that arose for decision in the Court below.

The jury, under the instructions of his Honor, having found a verdict for the plaintiff, judgment was accordingly rendered thereon. From this judgment the defendant appealed.

*Smith & Strong*, and *Keenan & Murray*, for appellant.
*Green, Justice* and *Woodard*, contra.

PEARSON, C. J. When this case was heard at the last term it occurred to us to be so strange that the Clerk, after issuing an execution, would receive the amount of the judgment in Confederate notes, which the plaintiff, being within the lines of the United States forces, could not get out of his office, and could not use, even if he got them, that we held the case over, and directed a *certiorari* to send up the execution.

It is in the usual form, issued 12th January, 1863, returnable the tenth Monday after the fourth Monday in September next, and is endorsed *fi. fa.* to Fall Term, 1863. The sheriff makes no return.

So the fact is, that Barefoot paid the Confederate notes into office in *January*, 1863, soon after the *fi. fa.* issued, whereas the *fi. fa.* was not returnable until *Fall* Term, 1863. We can only account for this haste to pay a debt upon the idea of a fraudulent *certiorari*, to " spoil the Egyptians," and extinguish a debt to parties who had taken sides with the Yankees.

1. Had the Clerk a right to receive the money in satisfaction of the judgment while an execution was in the hands of the sheriff ?

At common law a debtor was obliged to seek his creditor " wheresoever he may be within the four seas." This doctrine bore hard on debtors, and to relieve them it is enacted

by statute (Rev. Code, chap. XXXI, sec. 127) that after the creditor reduces his debt to judgment, the debtor may pay the money to the Clerk, " although no execution may have issued, and such payment of money shall be good and available to the party making the same."

We construe this statute to mean that the debtor may pay the money to the Clerk before any execution issues, or after an execution is returned, but it cannot be strained to cover a case where an execution has issued and is in the hands of the sheriff. It is not within the mischief, the debtor can make payment to the sheriff and need not seek for the creditor. If the Clerk can receive the money, the debtor may slip to the office and satisfy the judgment, and thus cheat the sheriff out of his commissions, or else the sheriff may exact commissions when he has not collected the money.

A decision in favor of the plaintiff might have been put on the ground that the Clerk had no authority to receive the money in satisfaction of the judgment, while the execution was in the hands of the sheriff.

2. Suppose the debtor had a right to pay the *money* to the Clerk while an execution was in the hands of the sheriff; payment in Confederate notes was not a payment in money, as required by the statute. *Pervis* v. *Jackson*, 69 N. C. Rep., 474. A decision for the plaintiff might have heen put on this ground.

3. Suppose the defendant was authorized to pay the money to the Clerk, notwithstanding there was an execution in the hands of the sheriff, and suppose the defendant had actually paid the money to the Clerk. So that under ordinary circumstances it would have satisfied the judgment, yet as in this case there was the extraordinary circumstance that a war broke out, and all communication with the plaintiff was cut off, such payment in money would not have had the effect to extinguish the judgment unless the plaintiff had actually received the money.

The war put an end to all agencies, whether that created by the statute, or that created by the relation of client and attorney, and the idea that a payment in Confederate money to the Clerk, pending an execution in the hands of the sheriff, is out of the question. *Fritz* v. *Storn,* 22 Wallace, 198.

No error.

PER CURIAM.                                     Judgment affirmed.